JOHN R. DITMARS, JR., Respondent, *v.* ADRIAN W. RENZ, Defendant, and MIDTOWN BANK OF NEW YORK, Appellant.

(Argued October 15, 1935; decided November 19, 1935.)

*Sidney O. Raphael* for appellant. Error of law was committed in permitting testimony as to the retention of the plaintiff to act as a broker based upon authority allegedly given by the codefendant when at the time of the alleged hiring the codefendant was neither officer, director or agent of the defendant-appellant, and was in fact merely acting for his own personal gain and profit. (*Francis Oil & Refining Co.* v. *Manville Co.*, 296 Fed. Rep. 349; 264 U. S. 592; *Matter of Continental Engine Co.*, 234 Fed. Rep. 58; *Copper King Mining Co.* v. *Hanson*, 176 Pac. Rep. 623; *Bank* v. *American Dock & Trust Co.*, 143 N. Y. 559; *Rochester & C. T. Road Co.* v. *Paviour*, 164 N. Y. 281; *Tifft* v. *Quaker City Nat. Bank*, 8 Pa. Co. 606; 141 Penn. St. 550; *First Nat. Bank* v. *Hoch*, 89 Penn. St. 324; *Twelfth St. Market Co.* v. *Jackson*, 102 Penn. St. 269; *Demarest* v. *Spiral Riveted Tube Co.*, 71 N. J. L. 14; *Crystal Copper Co.* v. *Gaido*, 5 Fed. Rep. [2d] 881.) Error was committed in permitting the jury to consider the case when as a matter of law the plaintiff wholly failed to sustain the burden of proof by a fair preponderance of the evidence and prove a sale. (*Slater* v. *American Palace Co.*, 146 App. Div. 859; *Noyes* v. *Caldwell*, 104 N. E. Rep. 495; *Simes* v. *Rockwell*, 31 N. E. Rep. 484; *Jaeger* v. *Kelley*, 52 N. Y. 274; *Blaikie* v. *Post*, 137 App. Div. 648.) Error was committed in denying the motions of the appellant to dismiss the complaint when as a matter of law the preponderance of the evidence indicates, at most, the negotiation of a loan by the financial corporation to the codefendant individually, and not to the bank. (*Second Nat. Bank* v. *Weston*, 172 N. Y. 250.) The plaintiff failed to prove his case by a preponderance of the evidence as a matter of law. (*Baulec* v. *Railroad*, 59 N. Y. 356; *Pollock* v. *Pollock*, 71 N. Y. 137; *Clapp* v.

*Schaus,* 156 App. Div. 681; *Hull* v. *Littauer,* 162 N. Y. 569; *Johnson* v. *N. Y. C. & H. R. R. R. Co.,* 173 N. Y. 79; *Morganstown Nat. Bank* v. *Weston,* 172 N. Y. 250.)

*Spencer Pinkham* for respondent. The appellant assumed and later ratified a binding contract whereby the respondent was hired as broker to sell the stock. Such contract was completely performed by the respondent. (*Patterson* v. *Ongley Electric Co.,* 87 Hun, 462; 155 N. Y. 674; *Lyon* v. *West Side Transfer Co.,* 132 App. Div. 777; *Patterson* v. *Robinson,* 116 N. Y. 193.)

LEHMAN, J. The plaintiff alleges in his amended complaint that in September, 1929, " the defendant Midtown Bank of New York retained the plaintiff as a broker for the purpose of negotiating the sale of certain shares of stock of said Midtown Bank of New York;" that thereafter the defendant sold to Ungerleider Financial Corporation 3,600 shares of its stock for a total sum of $288,000, and that such sale " was brought about by the plaintiff and resulted solely from his services." The verdict of the jury was in favor of the plaintiff in the sum of $2,880. Upon this appeal the defendant urges that the plaintiff, as matter of law, failed to establish a cause of action.

To establish his cause of action, the plaintiff must show that he was employed as a broker under a contract which is binding upon the defendant, and that he performed the services stipulated in that contract. In regard to both elements, the plaintiff's evidence is vague, and even though, upon this appeal, the plaintiff is entitled to the benefit of the most favorable inference that may reasonably be drawn from the evidence, his proof is insufficient. The gaps in the plaintiff's evidence cannot be bridged by any inferences which can reasonably be drawn from the evidence produced.

It appears that early in October, 1929, the Prudential Bank, of which the defendant Renz was then president, was about to become merged in the defendant bank.

The plaintiff testified that Renz asked him whether he knew the Ungerleider people, and whether he thought that they would take over a block of stock of the bank. " At that time," so the plaintiff testified, " Mr. Renz told me that there was a block of 1,600 units, divided into 1,600 of bank stock and 1,600 of Mid-Pru stock, a security affiliate, and that one of the directors of the bank had died, and his executors could not legally subscribe to the stock, and that was holding up a merger by which the Prudential Bank was taking over a bank called the Midtown Bank of New York, and changing its name. * * * I asked him who owned the stock * * * and he told me this executor; he mentioned no names; and asked me if I thought I could get the Ungerleider people to take it over. It would have to be done immediately, because the merger was being held up until this stock was subscribed for." Thereafter plaintiff discussed the matter with an officer of the Ungerleider Financial Corporation, and at the request of that corporation he obtained assurance from the chairman of the board of directors of the bank and from its counsel that Renz had authority to make the proposed sale. Then he introduced Renz to the Ungerleider Financial Corporation as broker and took part in no negotiations with the Ungerleider Financial Corporation.

This testimony falls far short of showing an employment by either the Prudential Bank or the Midtown Bank. Renz did not say that he was acting in behalf of either bank, or that either bank owned the stock. On the contrary, he did tell the plaintiff that the stock was owned by " an executor," and the only reasonable inference that can be drawn from the conversation between the plaintiff and Renz is, that Renz was acting either for himself or for the owner of the stock in employing the plaintiff.

The testimony that the chairman of the board of directors and the counsel of the Prudential Bank assured

the plaintiff that Renz had authority " to make the sale," even if it were admissible in an action against the bank, is not inconsistent with such employment. It follows that the plaintiff is entitled to compensation from the defendant bank only if there is further proof that as a result of the introduction by the plaintiff, Ungerleider Financial Corporation purchased stock which belonged to the bank and that the bank ratified the employment of the plaintiff who brought about the sale.

The plaintiff has no personal knowledge of any arrangement between Renz and Ungerleider Financial Corporation which resulted from his introduction. He relies for proof that the Financial Corporation purchased stock from the defendant bank upon the deposition before trial of Carl Sherman, who testified that he is a director, chairman of the executive committee, and one of the attorneys for the bank. The significant portions of Mr. Sherman's deposition read as follows:

" Q. Do you recall the merger between Midtown Bank of New York and the Prudential Bank? A. Yes.

" Q. What was the merger plan with reference to the increased capital as approved by the State Superintendent of Banks? A. The merger plan provided for 16,100 shares of increased capital stock at $65 per share.

" Q. Was all of this increased capital stock subscribed and paid for before the State Superintendent of Banks issued a charter? A. No. Some 1,400 or 1,500 shares were not paid for. The merger plan, however, had been substantially carried out.

" Q. How much of the increased capital stock did Renz subscribe for? A. I think 1,600 or 1,700 shares.

" Q. Did he pay for them in full? A. Yes.

" Q. Did the Midtown Bank of New York have any transaction or transactions with Ungerleider Financial Corporation, as a result of which Ungerleider Financial Corporation gave to the Midtown Bank of New York $288,000 or any part thereof in exchange for 3,600 shares of the capital stock of Midtown Bank of New York? A. No.

" Q. Did Ungerleider Financial Corporation pay to the Midtown Bank of New York for 1,600 shares at $65 a share? A. Yes.

" Q. Did Ungerleider Financial Corporation pay to the Midtown Bank of New York for 2,000 shares at $65 a share? A. Yes; either Ungerleider Financial Corporation or one of its nominees.

" Q. Did the Mid-Prud Corporation receive from the Ungerleider Financial Corporation or its nominees payment for 3,600 shares of its stock at $15 a share? A. Yes. * * *.

" Q. Will you tell us whose checks the bank received for the said 3,600 shares of stock, and in what amounts? A. One check from Ungerleider Financial Corporation or Samuel Ungerleider for $130,000, and one check from Ungerleider Financial Corporation or Samuel Ungerleider for $104,000. * * *.

" Q. In whose name were the said 3,600 shares of bank stock issued? A. I believe they were issued to one Eder, a nominee of Ungerleider Financial Corporation. * * *

" Q. When the stock was issued to Eder, was the same paid for? A. The stock was probably paid for simultaneously with its issuance."

The questions which plaintiff's counsel failed to ask Mr. Sherman are as significant as Mr. Sherman's answers to the questions that were asked. Mr. Sherman was not asked whether Ungerleider Financial Corporation had subscribed for any stock in the defendant bank or had bought any stock from it. His testimony that Ungerleider Financial Corporation paid by its check for 3,600 shares of stock in the defendant bank, and that simultaneously with that payment the bank issued 3,600 shares in the name of a nominee of the corporation, does not prove that the financial corporation had bought the stock from the bank or had subscribed to the stock at the request of the bank. Such payment may have been made by the financial corporation in accordance with a

previous arrangement made, not with the bank, but with a subscriber to stock of the bank, for the purpose of meeting the obligation of such subscriber upon his subscription.

The questions put to Mr. Sherman call for conclusions. They seem designed to elicit only part of the truth. It is true that where conflicting inferences can be drawn from testimony, a question of fact is presented for the jury; and it is also true that a party who proves facts from which an inference in his favor may be drawn, is not called upon to go further and exclude all possible explanation which might negative such inference. The difficulty here is that no inference, either in the plaintiff's favor or in the defendant's favor, can be drawn from the equivocal evidence produced by the plaintiff. For that reason the plaintiff's complaint should have been dismissed at the close of his evidence.

The burden of explaining his equivocal testimony so elicited was erroneously placed upon Mr. Sherman. He met that burden fully by oral and documental proofs that in fact payment to the bank for stock issued by it to a nominee of Ungerleider Financial Corporation was pursuant to an agreement made for a loan upon the security of stock for which Mr. Renz had subscribed or for a conditional sale of such stock. It is immaterial whether the agreement was for a loan to Renz or for a purchase of his stock. It is clear, at least, that no stock was purchased from either the Prudential ·Bank or the defendant bank, that the plaintiff was not employed to negotiate a sale of stock owned by either, and that the defendant bank did not ratify any contract of employment made with the plaintiff.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS and LOUGH-RAN, JJ., concur; CROUCH and FINCH, JJ., not sitting.

Judgments reversed, etc.